**RAJ V. ABHYANKER**, California SBN 233,284
raj@legalforcelaw.com
**BATKHAND ZOLJARGAL**, California SBN 262,918
zola@legalforcelaw.com
**LEGALFORCE RAPC WORLDWIDE**
1580 W. El Camino Real, Suite 10
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C.
LegalForce Inc., and Raj V. Abhyanker

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

UNLIMITED JURISDICTION

| | |
|---|---|
| 1. LEGALFORCE RAPC WORLDWIDE, P.C.; <br> 2. LEGALFORCE INC.; and <br> 3. RAJ V. ABHYANKER, <br><br> Plaintiffs, <br><br> v. <br><br> 1. LEGALZOOM.COM, INC.; <br> 2. LEGALZOOM LEGAL SERVICES LTD.; <br> 3. BRIAN P. Y. LIU; <br> 4. EDWARD RICHARD HARTMAN; <br> 5. BRIAN S. LEE; <br> 6. UNITED STATES PATENT & TRADEMARK OFFICE; <br> 7. THE STATE BAR OF | Case No. 5:17-cv-7194 <br><br> **COMPLAINT FOR:** <br><br> 1. DECLARATORY JUDGMENT; <br> 2. UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 of the SHERMAN ACT, 15 U.S.C. §1; <br> 3. FEDERAL UNFAIR COMPETITION; <br> 4. CALIFORNIA FALSE AND MISLEADING ADVERTISING; <br> 5. CALIFORNIA UNFAIR |

CALIFORNIA;
8. THE STATE BAR OF ARIZONA; and
9. THE STATE BAR OF TEXAS,

Defendants;

AND DOES 1-50.

COMPETITION;
6. PROFESSIONAL NEGLIGENCE; and
7. BREACH OF FIDUCIARY DUTIES.

**Unlimited Civil Jurisdiction**

**JURY TRIAL DEMANDED**

1.   Plaintiffs LegalForce RAPC Worldwide, P.C., LegalForce, Inc., and Raj V. Abhyanker (jointly, "LegalForce" or "Plaintiffs") submit the following complaint (the "Complaint") against LegalZoom.com Incorporated and its wholly owned subsidiary Legalzoom Legal Services Ltd. in the United Kingdom (collectively, "LegalZoom"), its co-founder attorneys Brian P. Y. Liu, Edward Richard Hartman, and suspended co-founder attorney Brian S. Lee.  Plaintiffs join necessary defendants the United States Patent & Trademark Office ("USPTO"), the State Bar of California, the State Bar of Arizona, and the State Bar of Texas.

### **NATURE OF ACTION**

2.   This Complaint is brought by Plaintiffs to expose the willful and systematic acts of unauthorized practice of law, false advertising and unfair competition by LegalZoom with respect to preparation and filing of trademark applications before the USPTO, and to establish that either licensed attorneys

should be able to compete on an equal playing field; or, in the alternative, LegalZoom be enjoined from and pay damages for its unauthorized practice of law, false advertising, unfair competition and other claims with respect to preparation and filing of trademark applications before the USPTO.

## THE PARTIES

### The Plaintiffs

3.  Plaintiff LegalForce RAPC Worldwide, P.C. ("LegalForce RAPC Worldwide") is a law firm wholly owned by Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

4.  Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.

5.  Plaintiff Raj Abhyanker is a California licensed attorney practicing patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole

shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.  Plaintiff Raj Abhyanker is a winner of the 2013 Legal Rebel award by the American Bar Association.

**The Defendants**

6.  LegalZoom.com, Inc. is a Delaware corporation ("LegalZoom") with a principal place of business at 101 N. Brand Blvd., Glendale CA 91203. LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.  LegalZoom is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

7.  LegalZoom Legal Services Ltd., is a foreign law firm (upon reason and belief affiliated with the website www.legalzoom.co.uk) with a principal place of business at The Broadgate Tower, Third Floor, 20 Primrose Street, London, EC2A 2RS, England.  Upon reason and belief, LegalZoom Legal Services Ltd. is a wholly owned subsidiary of LegalZoom.com, Inc.

8.  Defendant Brian P. Y. Liu ("Liu") is a co-founder and Chairman of LegalZoom, and a licensed California attorney, having a principal place of business at 14246 Valley Vista Blvd, Sherman Oaks, California 91423.

9.   Defendant Edward Richard Hartman ("Hartman") is a co-founder, Chief Strategy Officer, and Chief Technology Officer of LegalZoom, and a licensed

California attorney, having a principal place of business at 1982 Dakin Ave, Menlo Park, California 94025-6045.

10.  Defendant Brian S. Lee ("Lee") is a co-founder of LegalZoom, and a suspended California attorney, having a principal place of business at 12181 Bluff Creek Drive, 5th Floor, Playa Vista, California 90094.

11.  Defendant the United States Patent & Trademark Office ("USPTO"), a branch of the United States Department of Commerce, is being added as a necessary defendant as it governs the conduct of U.S. state licensed attorneys and registered patent attorneys before the United States Patent & Trademark Office, with a principal place of business at 600 Dulany Street, Alexandria VA 22314.  The United States Patent & Trademark Office also maintains a Silicon Valley office located at 26 S 4th St, San Jose, California 95112.

12.  Defendant the State Bar of California is the agency responsible governing the conduct of the licensed attorneys and bringing enforcement actions against entities engaging in the unauthorized practice of law in the State of California.  Accordingly, it is named as a necessary defendant as it governs the conduct of California licensed attorneys, with a principal place of business at 180 Howard Street, San Francisco CA 94105.

13.  Defendant the State Bar of Arizona is the agency governing the conduct of licensed attorneys and bringing enforcement actions against entities engaging

in the unauthorized practice of law in the State of Arizona. Accordingly, it is named as a necessary defendant as it governs the conduct of Arizona licensed attorneys, with a principal place of business at 4201 N. 24th St., Suite 100, Phoenix, AZ  85016-6266.

14. Defendant the State Bar of Texas is the agency governing the conduct of licensed attorneys and bringing enforcement actions against entities engaging in the unauthorized practice of law in the State of Texas.  Accordingly, it is named as a necessary defendant as it governs the conduct of Texas licensed attorneys, with a principal place of business at 1414 Colorado Street, Austin, Texas 78701.

15.  DOES 1-50 are entities that participated in the transactions complained of herein in ways which are unknown to Plaintiffs.  The true names, capacities, nature, and extent of participation in the alleged activities by DOES 1-50, inclusive, are unknown to Plaintiffs and therefore Plaintiffs sue these defendants by such fictitious names.   Plaintiffs will amend the complaint to allege their true names and capacities when ascertained.

## **BACKGROUND OF THE PARTIES**

16.  Plaintiff LegalForce RAPC Worldwide is a law firm wholly owned by Plaintiff Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.    The Firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W.

El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

17.   The website Trademarkia.com was created by the law firm of LegalForce RAPC Worldwide in 2009 but was spun off into a separate entity.   Plaintiff LegalForce RAPC Worldwide is the sole provider of legal services through the website Trademarkia.com with respect to trademark filings before the USPTO.

18.   LegalForce RAPC Worldwide employs, full time, more than ten (10) U.S. licensed trademark attorneys in its California and Arizona offices who substantially limit their practice to trademark law before the USPTO, and who are supported by legal support staff globally including in India, China, Poland, the United Kingdom and South Africa.   LegalForce RAPC Worldwide represents more than 10,000 clients from all over the United States and world, including over a thousand clients from the State of California, hundreds of clients in the State of Arizona, and over a thousand clients the State of Texas.

19.   LegalForce RAPC Worldwide is the largest law firm filer of trademarks before the USPTO in each of the last five years.   The firm maintains interest on Lawyer Trust Account (IOLTA) trust accounts for all client funds, conducts robust conflict checks, and currently employs two former USPTO trademark examining attorneys.   It has never been disciplined by the USPTO, the State Bar of California, the State Bar of Arizona, or the State Bar of Texas.   At least two

of its former attorneys are currently hired as USPTO trademark examining attorneys after leaving LegalForce RAPC, and a number of its former associate attorneys or legal assistants have been hired in trademark and IP departments of leading Big Law IP firms including Orrick, Perkins Coie, Pillsbury Winthrop, DLA Piper, and Wilson Sonsini Goodrich & Rosati as well as in legal departments at leading technology companies, including Google, Inc., Facebook, Inc., and Apple, Inc.

20.   Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.  The Chief Executive Officer (CEO) and co-founder of Plaintiff LegalForce, Inc. is Plaintiff Raj Abhyanker.  Plaintiff LegalForce, Inc. makes no revenue from preparation and filing on U.S. trademark applications.   It receives a flat monthly technology licensing revenue from Plaintiff LegalForce RAPC Worldwide independent of the legal services revenue secured by the firm LegalForce RAPC Worldwide through the Trademarkia.com website.

21.   Plaintiff Raj Abhyanker is a California licensed attorney practicing patent & trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole

shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.   In 2013, he was named an American Bar Association Journal "Legal Rebel," an "annual honors program for the change leaders of the legal profession"[1] and a member of the Fastcase 50, an annual award that "recognizes 50 of the smartest, most courageous innovators, techies, visionaries, and leaders in the law."[2]

22.   LegalZoom, Inc. is a Delaware corporation (LegalZoom.com, Inc.) with a principal place of business at 101 N. Brand Blvd., Glendale CA 91203. LegalZoom also has a shuttered office address in this County of Santa Clara at 888 Villa Street #430, Mountain View, California 94041 (still listed on Google local listings as of the filing of this Complaint), and another shuttered office in this County of Santa Clara at 1911 Landings Drive, Mountain View, CA 94043[3], which is incorrectly listed on LegalZoom's HR page despite being closed for months as of filing of this Complaint.

23.   LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.   (**Exhibit M**, highlighted).

---

[1] http://www.abajournal.com/magazine/article/2013_legal_rebels_a_banner_year
[2] http://www.fastcase.com/fastcase50-winners-2013.
[3] https://www.legalzoom.com/career-center/locations.html as of December 17, 2017.  This URL lists LegalZoom's closed office in Mountain View as Innovation Center: Mountain View, CA, 1911 Landings Drive, Mountain View, CA 94043.

24.   LegalZoom Legal Services Ltd., is a law firm (upon reason and belief affiliated with the website www.legalzoom.co.uk) with a principal place of business at The Broadgate Tower, Third Floor, 20 Primrose Street, London, EC2A 2RS, England.   Upon reason and belief, LegalZoom Legal Services Ltd. is a foreign law firm licensed to practice law in the United Kingdom under the Alternative Business Structure (ABS) structure (**Exhibit G**).   Upon reason and belief, LegalZoom Legal Services Ltd. is a wholly owned subsidiary of LegalZoom.com, Inc.   For the purposes of this complaint, "LegalZoom" shall refer to both Legalzoom.com, Inc. and LegalZoom Legal Services Ltd collectively.

25.   LegalZoom's CEO John Suh has recently falsely implied, in its "chapter 3" of LegalZoom's corporate evolution, that it can provide legal services in the United States after it became a law firm in United Kingdom in 2015 when he stated as much in an Ernst & Young interview[4] and a similar interview with a customer Bill Carmody in the United States[5] less than a month earlier.  Suh even falsely explained that LegalZoom's law firm structure in the United Kingdom enables the company to practice law in the United States to the New Hampshire Bar while also boasting that LegalZoom has spent two years advertising their

---

[4] LegalZoom exec reflects on the company's evolution, on November 16, 2016, https://www.youtube.com/watch?v=ORbZcMmDJOs&t=2m11s
[5] John Suh, CEO of LegalZoom interview with Bill Carmody on October 21, 2016, https://www.youtube.com/watch?v=aOKFr2XTbsE&t=12m52s

new "law firm" structure and how certain practice areas are entirely done with a lawyer.[6]   In reality, LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom has become a law firm in the United Kingdom only after acquiring a law firm in that country, following deregulation of ownership of law firms in the United Kingdom in 2012. (**Exhibit G**).

26.   Moreover, LegalZoom has recently boasted that it has filed more than two-hundred fifty thousand (250,000) trademarks before the United States Patent & Trademark Office on behalf of customers. (Forbes article, October 9, 2017, **Exhibit M**).   In addition, LegalZoom's co-founder Brian P. Y. Liu admitted that he created LegalZoom with his co-founder to provide legal services.[7]

27.   **JURISDICTION AND VENUE**

28.   This Complaint arises under the laws of the United States, 15 U.S.C. §1125 *et seq.*  This Court has original jurisdiction of this action under 28 U.S.C. §1331 because at least some of the claims alleged herein arise under federal law. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over any non-federal claims because such claims are so related as to form part of the same case or controversy.   Moreover, Plaintiffs have standing to their California state

---

[6] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=4m31s

[7] The LegalZoom.com Story - From Making It! - MAKING IT! TV (Entrepreneur Success Stories), October 28, 2010, https://www.youtube.com/watch?v=CR-H1CnbZfw&t=2m48s.

claims under the California Business and Professions Code in accordance to California appellate case law in *Higbee v. Expungement Assistance Services*.[8]

29.   This Court has personal jurisdiction over LegalZoom because the defendant solicits, transacts and does business in California and this District via its website and toll-free telephone number, a substantial part of the wrongful acts or omissions complained of herein occurred in this District, and the defendant is subject to personal jurisdiction in this District.   LegalZoom purposefully directed its activities toward this District when it willfully and specifically targeted consumers here and a substantial part of the harm was felt in this District.

30.   Defendants Liu, Hartman, and Lee are all residents of California, and are either licensed attorneys or suspended attorneys in the State of California.

31.   Defendant United States Patent & Trademark Office maintains a regional office in California in the County of Santa Clara, and its rules apply to attorneys and law firms licensed in this state including Plaintiff Raj Abhyanker and Plaintiff LegalForce RAPC Worldwide.

32.   Defendant the State Bar of Arizona has no known presence in this state,

---

[8] 214 Cal. App. 4th 544 *; 153 Cal. Rptr. 3d 865 **; 2013 Cal. App, in which the court concluded that the attorney alleged an identifiable trifle of injury sufficient to withstand a demurrer. The attorney alleged that he suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the provider's unlawful business practices. To have standing under the UCL, the attorney was not required to have engaged in business dealings with the provider. The court saw no reason why the alleged violation of statutes concerning the unauthorized practice of law could not serve as a predicate for the attorney's UCL action. According to the attorney, the provider's unlawful business practices had taken customers away from him.

but is a necessary party to this litigation because Plaintiff LegalForce RAPC Worldwide employs attorneys in the State of Arizona many of whom are licensed to practice law in the State of Arizona.  In addition, Plaintiff LegalForce RAPC Worldwide has hundreds of clients in the state of Arizona for federal trademark matters.

33.   Defendant the State Bar of Texas has no known presence in this state, but is a necessary party to this litigation because LegalZoom employs more than 100 employees in the State of Texas, including unlicensed trademark document specialists, upon reason and belief.   In addition, Plaintiff LegalForce RAPC Worldwide has over a thousand clients in the state of Texas for federal trademark matters.   Moreover, the State Bar of Texas regulates the conduct for the practice of law in the State of Texas.

34.   Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. §§ 1391 (b) and (c).

## ETHICS RULES RELEVANT TO ALL CLAIMS

I. DEFENDANT USPTO'S DEFINITION OF UNAUTHORIZED PRACTICE OF LAW FOR TRADEMARK MATTERS BEFORE THE USPTO.

35.   Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document. (**Exhibit A**).

36.   Preparing or prosecuting an application, response, post-registration maintenance document, or other related document.  (**Exhibit A**).

II.  DEFENDANT USPTO'S DEFINITION OF LEGAL ADVICE FOR TRADEMARK MATTERS BEFORE THE USPTO.

37.  Conducting pre-filing searches for potentially conflicting trademarks. (**Exhibit B**).

38.  Analyzing or pre-approving documents before filing.  (**Exhibit B**).

39.  Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services.  (**Exhibit B**).

III.  APPLICABLE RULES AND REGULATIONS ON THE PRACTICE OF LAW BEFORE THE USPTO.

USPTO RULES

40. **37 CFR §11.503 – Duty to supervise non-lawyers.**  With respect to a non-practitioner assistant employed or retained by or associated with a practitioner: (b) A practitioner having direct supervisory authority over the non-practitioner assistant shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the practitioner; and (c) A practitioner shall be responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner if: (1) The practitioner orders or, with the

knowledge of the specific conduct, ratifies the conduct involved.

41. **37 CFR §11.504 – A Law Firm Cannot Raise Venture Capital from Non-Attorneys.**  With respect to a non-practitioner (d) A practitioner shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (1) A non-practitioner owns any interest therein, except that a fiduciary representative of the estate of a practitioner may hold the stock or interest of the practitioner for a reasonable time during administration.

42. **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

43. **37 CFR §11.107 – Conflict of interest.**  (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

44. **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold

property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

45. **37 CFR §11.18 – Signature and certification for correspondence filed in the Office.** (a) For all documents filed in the Office in patent, trademark, and other non-patent matters, and all documents filed with a hearing officer in a disciplinary proceeding, except for correspondence that is required to be signed by the applicant or party, each piece of correspondence filed by a practitioner in the Office must bear a signature, personally signed or inserted by such practitioner, in compliance with § 1.4(d) or § 2.193(a) of this chapter.

46. There are other counterpart state court rules in before the California State Bar, the State Bar of Arizona, the State Bar of Texas, all not reprinted here, with largely similar restrictions.

///

CALIFORNIA CIVIL CODE

47. **California Business and Profession §6125 – Unlawful Practice of Law.** No person shall practice law in California unless the person is an active member of the State Bar.

AMERICAN BAR ASSOCIATION RULES

48. **ABA Model Rule 5.4(d) – Restriction on ownership of a law firm by non-lawyers.**   A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (1) a non lawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (2) a non lawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or (3) a non lawyer has the right to direct or control the professional judgment of a lawyer.

49. Upon reason and belief, American Bar Association (ABA)'s model rules, including, but not limited to, the restriction of ownership of law firms, have been substantially adopted by the USPTO, the State of Bar of Arizona, and the State Bar of Texas.    In addition, the ABA has sparked a debate over non-lawyer ownership of law firms (**Exhibit Y**).

IV.  LEGALZOOM SURREPTITIOUSLY VIOLATES UNAUTHORIZED PRACTICE OF LAW RULES OF THE USPTO AND PROVIDES LEGAL ADVICE TO CUSTOMERS FOR UNITED STATES TRADEMARKS.

50. Plaintiffs filed two trademark applications through the LegalZoom website.   Email addresses of raj@legalforcelaw.com for customer RAJ

ABHYANKER and ryanb@legalforcelaw.com were used for customer LegalForce RAPC Worldwide (on behalf of Team Messaging Solutions, Inc., represented by attorney manager RYAN BETHEL).

51.   Two real trademarks related to businesses of Plaintiffs, including DRAWMARKIA and PIGGIEBANK were applied for federal registration through the LegalZoom website.    Drawmarkia.com is an unincorporated a startup project of Plaintiff Raj Abhyanker related to whiteboard animation services for startups.    Team Messaging Solutions, Inc. is a Delaware C Corporation funded by Plaintiff LegalForce RAPC Worldwide who's equity shareholders include Ryan Bethell and Raj Abhyanker, and which operates the website Piggiebank.com (www.piggiebank.com).    The conversations with LegalZoom's non-attorney Trademark Document Specialists were audio recorded.    Both Texas and Arizona (from where calls were made) are one party recording states, as is federal law for interstate calls.   A transcripts of these recordings are found in **Exhibit D** for the DRAWMARKIA mark and **Exhibit E** for the PIGGIEBANK mark.

52.   For both of the prospective trademarks, DRAWMARKIA and PIGGIEBANK, LegalZoom provided legal advice to Plaintiffs by selecting classification and modifying the goods and services description from the template thereby applying specific law to facts.  (See **Exhibit D** and **Exhibit E**,

respectively).   In addition, for the PIGGIEBANK mark, LegalZoom provided legal advice as to which trademarks found in the search report may conflict with the PIGGIEBANK trademark (**Exhibit E**).

53.  Although LegalZoom represents on its website that it does not practice law, this representation is false and/or misleading.  LegalZoom collects both its services fee of $199 for a non-attorney "peace of mind" review and $275 in government fees in advance of filing. (**Exhibit V**).  However, after a trademark filing request is made on the LegalZoom website, LegalZoom surreptitiously practices law per the USPTO definition in critical steps in which classification of trademarks are determined, the description of goods and services are adjusted, and search results are reviewed with customers.   To hide from regulators, LegalZoom does not send any emails during a critical step of "class selection and description modification step" ("Surreptitious Step"). It makes a note on its website that there are "problems with your order" and robo-calls the number listed on the trademark workflow.   Upon reason and belief, the individuals who LegalZoom routes to are non-lawyer "Trademark Document Specialists". [9]

54.  LegalZoom violates a number of clear boundaries for practice of law during the Surreptitious Step, including:

---

[9] Trademark Document Specialists at LegalZoom's job description can be found in **Exhibit C**.  1. Upon reason and belief, LegalZoom has intentionally left this description vague to thwart challenges to its business model for unauthorized practice of law.  While the definition in **Exhibit C** leaves room for debate, the public job description include "prepare trademark document ordered by LegalZoom customers" which very close to the UPL definition on the USPTO website which includes "preparing or prosecuting an application". (**Exhibit A**).

a.  **Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document.  (Exhibit A).**

i.      With respect to the DRAWMARKIA mark, the non-lawyer trademark document assistant named "Will" provided legal advice to the applicant Plaintiff Raj Abhyanker who was contemplating filing a trademark application for DRAWMARKIA.   LegalZoom representative "Will" provided the legal advice when he modified the template description in the ID Manual of the USPTO based on his legal consultation with Plaintiff Raj Abhyanker.      Trademark document assistant Will at LegalZoom also provided legal advice to Plaintiff Raj Abhyanker by narrowing classes to Class 41 and Class 42, and ultimately recommending to leave the class blank.   Will also provided legal advice when he recommended additional items to incorporate into the description of goods and services.   (**Exhibit D**).

ii.      With respect to the PIGGIEBANK mark, the non-lawyer trademark document assistant named "Alex" gave legal advice to the applicant Ryan Bethell, the attorney manager at LegalForce RAPC Worldwide who was contemplating filing a trademark application for PIGGIEBANK.   LegalZoom representative "Alex" provided legal advice

when she modified the template description to match the ID Manual of the USPTO based on her legal consultation with Ryan Bethell.   The trademark document assistant at LegalZoom also provided legal advice to the Ryan Bethell by advising that state and federal trademarks found in the search report would not likely prevent registration of the PIGGIEBANK trademark.   (**Exhibit E**).

iii.   In addition, with respect to the PIGGIEBANK mark, a non-lawyer trademark document assistant named "Robert" gave legal advice on the relevance of potentially conflicting marks to Ryan Bethell.   Specifically, LegalZoom's agent, "Robert," provided legal advice when he erroneously advised that only similar marks that were within the same international trademark classification of goods and services would pose any risk to obtaining a federal trademark registration. (**Exhibit E**).

iv.   Furthermore, LegalZoom practiced law when it unilaterally waived Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide's right to privacy with respect to the DRAWMARKIA and PIGGIEBANK trademarks by having non-attorney staff sign off rights while paying government fees by check box clicking off the following on the USPTO government fee form shown in **Exhibit W** including : (1) Waiving Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide's right to

cancel the filing or refund the government fee paid on their behalf;  (2) Waiving right to confidentiality of name, phone number, e-mail address, and street address of Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide with respect to their trademarks; and  (3) Representing to the federal government, without checking with Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide, that LegalZoom has the authority to grant, and is granting, the USPTO permission  to make the information available in its on-line database and in copies of the application or registration record.

b.     **Preparing or prosecuting an application, response,**

**post-registration maintenance document, or other related document.**

**(Exhibit A).**

Particularly, non-lawyer assistants at LegalZoom prepared the trademark application for DRAWMARKIA mark and PIGGIEBANK for filing without attorney review.

c.     **Conducting pre-filing searches for potentially conflicting**

 **trademarks. (Exhibit B).**

Particularly, non-lawyer assistants at LegalZoom prepared pre-filing searches for potentially conflicting marks for DRAWMARKIA mark and PIGGIEBANK without attorney review.

    d.    **Analyzing or pre-approving documents before filing. (Exhibit B).**

Particularly, non-lawyer assistants at LegalZoom prepared pre-filing searches for potentially conflicting marks for DRAWMARKIA mark and PIGGIEBANK without attorney review.

    e.    **Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services.**

    i.    With respect to the DRAWMARKIA mark, the non-lawyer trademark document assistant named "Will" provided legal advice to the applicant Plaintiff Raj Abhyanker who was contemplating filing a trademark application for DRAWMARKIA.   LegalZoom representative "Will" provided legal advice when he modified the template description in the ID Manual of the USPTO based on his legal consultation with Plaintiff Raj Abhyanker.   The trademark document assistant Will at LegalZoom also provided legal advice to Plaintiff Raj Abhyanker by narrowing classes to Class 41 and Class 42, and ultimately recommending to leave the class blank.   Will also provided legal advice when he recommended additional items to incorporate into the description of goods and services. (**Exhibit D**).

    ii.    With respect to the PIGGIEBANK mark, the non-lawyer

trademark document assistant named "Alex" gave legal advice to the applicant Ryan Bethell, the attorney manager at LegalForce RAPC Worldwide, who was contemplating filing a trademark application for PIGGIEBANK.   LegalZoom representative "Alex" provided legal advice when she modified the template description to match the ID Manual of the USPTO based on her legal consultation with Ryan Bethell.     The trademark document assistant at LegalZoom also provided legal advice to Ryan Bethell by advising that state and federal trademarks found in the search report would not likely prevent registration of the PIGGIEBANK trademark.  (**Exhibit E**).

iii.    Further still, with respect to the PIGGIEBANK mark, a non-lawyer trademark document assistant named "Robert" gave advice on the relevance of potentially conflicting marks to Ryan Bethell. Specifically, LegalZoom's agent, "Robert," provided legal advice when he erroneously advised that only similar marks that were within the same international trademark classification of goods and services would pose any risk to obtaining a federal trademark registration. (**Exhibit E**).

iv.    In addition, LegalZoom practiced law when it unilaterally waived Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide's right to privacy with respect to the DRAWMARKIA and PIGGIEBANK

trademarks by having non-attorney staff sign off rights while paying government fees by check box clicking off the following on the USPTO government fee form shown in **Exhibit W** including : (1) Waiving Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide's right to cancel the filing or refund the government fee paid on their behalf;  (2) Waiving right to confidentiality of name, phone number, e-mail address, and street address of Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide with respect to their trademarks; and  (3) Representing to the federal government, without checking with Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide, that LegalZoom has the authority to grant, and is granting, the USPTO permission to make the information available in its on-line database and in copies of the application or registration record.

55. Upon reason and belief, LegalZoom performs the "Surreptitious Step" to ensure that it does not file ineffectual trademark applications that are highly likely to get rejected by the USPTO.   It seems, upon reason and belief, LegalZoom's non-lawyer staff are well trained to provide this legal advice.

56. Upon reason and belief, after LegalZoom's Trademark Document Specialists provide critical legal advice during this Surreptitious Step, the mark proceeds to the "trademark search" phase.  This "trademark search" phase is

again performed non-lawyer staff without review by licensed attorneys in violation of the USPTO's practice of law definition in **Exhibits A and B**.  After the search is delivered by non-attorney staff to the customer, the phone support of LegalZoom in the post trademark search step sometimes provide legal advice by advising customers by giving them advice as to which specific trademarks in the search report are more likely to block a registration.   (**Exhibit E**).

57. Upon reason and belief, after the customer approves, LegalZoom enters the customer's information directly into the USPTO website and requests a link from the USPTO to the signature form using an internal LegalZoom non-attorney staff's email ID. (**Exhibit F**).  Upon reason and belief, LegalZoom then repackages this link and sends it to the customer in a templated email including the USPTO link.   After the customer signs the USPTO link, LegalZoom's non-lawyer staff again go to a different USPTO link emailed to LegalZoom by the USPTO which expressly waives each customer's right to privacy and has LegalZoom attest that LegalZoom has the authority to grant the USPTO permission to make information submitted available on its online database regardless of the underlying copyrights.    On this same form, LegalZoom pays the government fee to the USPTO on its own LegalZoom credit card and/or deposit account with the USPTO.  Upon reason and belief, LegalZoom does not refund $50 of the collected $275 government fee collected

through its website if the non-lawyer staff at LegalZoom determine that the trademark qualifies as a TEAS Plus application with the lower filing fee of $225.

58. Moreover, upon reason and belief, LegalZoom maintains no client trust account (IOLTA account) for trademark matters, uses non-lawyer assistants to evaluate specimens of use in commerce for authenticity, and performs no conflict checks against other customers.

59. LegalZoom has raised more than three-hundred million ($300 million) in venture capital (**Exhibit G**), something that Plaintiff LegalForce RAPC Worldwide as a law firm cannot do without violating ethical rules of the USPTO and State Bar rules.[10]   LegalZoom even boasts in its advertising with customer quotes hinting that they received legal advice surreptitiously when it quotes customer Jeremy Hudson "instead of expensive meetings at a law office, LegalZoom's website and a few helpful phone calls had me on my way to a trademark approval" (**Exhibit G**).   Moreover, LegalZoom's CEO boasted that "we finally shut down the unauthorized practice of lawsuit" and "it cost $16

---

[10]  **CFR §11.504 and ABA Model Rule 5.4(d), reprinted here.  – A Law Firm Cannot Raise Venture Capital from Non-Attorneys.**  With respect to a non-practitioner (d) A practitioner shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (1) A non-practitioner owns any interest therein, except that a fiduciary representative of the estate of a practitioner may hold the stock or interest of the practitioner for a reasonable time during administration.  **ABA Model Rule 5.4(d) – Restriction on ownership of a law firm by non-lawyers.**  A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (1) a non lawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (2) a non lawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation ; or (3) a non lawyer has the right to direct or control the professional judgment of a lawyer.

million dollars over 11 years"[11], and when asked "what is it that you had to stop doing", LegalZoom's CEO defiantly responded "*Nothing*".[12]

60. In contrast, as a law firm, Plaintiff LegalForce RAPC Worldwide and its licensed attorneys must conduct conflict checks with existing clients prior to taking on representation of prospective clients.[13]  It must place client funds in an IOLTA trust account prior to work being started.[14]  It must hire U.S. licensed attorneys to counsel clients on trademark classification selection, modifying description of goods and services, and reviewing specimens provided by its clients for completeness and applicability to the selected classification.[15]

61. If Plaintiff LegalForce RAPC Worldwide and its licensed attorneys were to adopt a similar model as LegalZoom, it is very likely that the firm and its licensed attorneys would be disbarred and/or excluded from practicing law by

---

[11] **Collision Conference interview**, May 5, 2016, New frontiers and how to tackle them - John Suh & Jonathan Krim, https://www.youtube.com/watch?v=pHK21ta6yQI&t=4m40s

[12] **Collision Conference interview**, May 5, 2016, New frontiers and how to tackle them - John Suh & Jonathan Krim, https://www.youtube.com/watch?v=pHK21ta6yQI&t=4m55s

[13] **37 CFR §11.107 – Conflict of interest.**   (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

[14] **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

[15] **California Business and Profession §6125** – **Unlawful Practice of Law**.  No person shall practice law in California unless the person is an active member of the State Bar.  **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

the USPTO, the State Bar of California, the State Bar of Arizona, and/or the State Bar of Texas.

62. This is a real threat.   Recently, Matthew Swyers ("Swyers"), a former USPTO trademark examining attorney in private practice and founder of The Trademark Company, was excluded for practice by the USPTO for the conduct similar to LegalZoom's (**Exhibit H**).     In addition, another attorney Tracy W. Druce ("Druce") was suspended for failure to supervise assistants even though the lawyer did not know of the conduct of his assistants signing documents on his behalf (**Exhibit I**).      Moreover, the USPTO also excluded from practice Leonard Tachner ("Tachner"), who, like Defendant Brian S. Lee, was a suspended attorney whose corporation prepared and filed trademark applications while he was suspended on the grounds of unauthorized practice of law. (**Exhibit J**).

63. Unlike Swyers, Druce, and Tachner, upon reason and belief, the USPTO and State Bars take no similar action against LegalZoom and their co-founders because of LegalZoom's vast financial resources to fight the State Bars and because they do not have attorneys whose licenses the State Bars or the USPTO can exclude. This double standard is a great injustice that harms both attorneys and the public at large.   Attorneys who have spent years going through law school, taking a difficult bar exam, maintaining an IOLTA trust account, and

performing conflict checks **cannot** effectively compete against non-law firm competitors like LegalZoom on an even playing field. (**Exhibit K**). It also lowers the standard of service to the public because LegalZoom customers rely on the legal advice given by non-attorneys.   For these reasons, declaratory judgment is sought against LegalZoom, or in the alternate, an injunction and damages for antitrust, false advertising, unfair competition, malpractice, and other causes of action.

V.  LEGALZOOM'S MISLEADING GOOGLE, BING, AND OTHER ONLINE ADVERTISING IS DAMAGING TO PLAINTIFFS' GOODWILL AND MISLEADING TO THE PUBLIC WITH FALSE COMPARISONS TO ATTORNEY LED SERVICES, AS SUCH ACTIONS CAUSING IRREPARABLE HARM TO PLAINTIFFS.

64. Plaintiff LegalForce RAPC Worldwide and Defendant LegalZoom are the largest purchasers of online advertising including on Google and Bing per month for "trademark filing" related search terms, exceeding monthly advertising spend of over one-hundred thousand dollars per month ($100,000/month).

65. Upon reason and belief, LegalZoom's non-attorney "peace of mind" trademark filing service has threatened, and continues to threaten, Plaintiff LegalForce RAPC's business directly by outbidding Plaintiff LegalForce RAPC Worldwide on Google and Bing for the keywords during the year 2017 and

achieving a higher impression share and average position on search engines, when it is not itself a law firm.  (**Exhibit L**).

66. LegalZoom is not a law firm or authorized to practice law in any state. LegalZoom is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

67. Despite not being a law firm and despite not hiring any attorneys representing external clients, LegalZoom purchases advertisements whenever consumers search terms related to the practice of trademark law including "trademark attorney" (**Exhibit N**) and "trademark lawyer" (**Exhibit O**).  The advertising copy in the resulting advertisements is highly misguiding, leading a consumer to believe that he or she will be represented by an attorney.

68. Perhaps even more egregious is LegalZoom's purchase of advertising directly targeting the Plaintiffs. (**Exhibit Q**).  LegalZoom directly purchases uniquely positioned advertisements on Google and other forms of online advertising whenever consumers search the names of the Plaintiffs' businesses, including "LegalForce" and even the Plaintiff Raj Abhyanker's personal name "Raj Abhyanker". (**Exhibit Q**).    Upon reason and belief, advertising copy of these advertisements intentionally and maliciously targets the Plaintiffs. Moreover, upon reason and belief, LegalZoom's advertising targeting the Plaintiffs is unique to any other advertisement, and purposefully designed to

draw false comparisons and to mislead consumers.  Particularly, in such ads, LegalZoom writes "Avoids Costly Conflicts" to mislead customers by implying that Plaintiffs' conflict checks are harmful to them.

69. In contrast, rules for mandatory conflict checks, attorney client privilege, and storing client funds in IOLTA accounts have been adopted by every State Bar, for the explicit purpose of protecting clients. LegalZoom boasts about eschewing these long standing client protections.  While not having power of attorney, not holding attorney client privilege, and not conducting conflict checks, yet still providing legal advice, LegalZoom's advertising copy is explicitly designed to wrongfully imply that avoiding conflict checks is a benefit to clients.

70. Further, LegalZoom attempts to misdirect traffic from landing pages related to its "attorney led" service to its "peace-of-mind" non-attorney service (**Exhibit V**) by linking its attorney-led advertising copy to its non-attorney led services.  This is true even when the text in LegalZoom's advertisements mentions the attorney guided service[16] in **Exhibits N, O and P**.   Despite the text, a potential customer searching in Google for a trademark attorney in the United States is redirected to LegalZoom's non-attorney "peace of mind landing page".   Upon reason and belief, Defendant LegalZoom deceptively geo-targets

---

[16] LegalZoom also offers a $799 or $599 + government attorney guided service for trademark filings through Dunlap, Bennett & Ludwig PLLC, upon reason and belief.  However, this instant complaint only seeks clarity on Defendant LegalZoom's $199 + government fee "peace of mind" non-attorney trademark filing service.

these ads for "trademark attorney" for audiences searching through browsers in the United States based on Internet Protocol (IP) address using Google's AdWords tools.

71. For example, the Google text in **Exhibit N** having the text "File Your Application With the Help of An Independent Trademark Attorneys", and **Exhibit P** having the text "Speak to an Attorney" is linked to LegalZoom's non attorney landing page in **Exhibit R** and linked below at URL offering "peace of mind review" and trademark filings for $199 [+] government fees, and consultation with a licensed attorney only if a user signs up for a legal plan for $29.99 a month, and not for a licensed trademark attorney to handle the initial filing[17], rather than the landing page for attorney service offered by LegalZoom at $799 or $599 + government fees[18], which is shown in **Exhibit S**.

72. Similarly, LegalZoom's own website page "Do you Need a Lawyer to File a Trademark" (**Exhibit T**) has a large orange link at the bottom saying "Learn more about attorney-led trademark registration" which misdirects to a different non-lawyer "peace of mind" service landing page (**Exhibit U**) instead

---

[17]https://www.legalzoom.com/sem/ip/trademark.html?kid=3b4071e7-6eee-4394-98ac-9020b6c73fe6&utm_source=bing&utm_medium=cpc&utm_term=trademark_lawyer&utm_content=3b4071e7-6eee-4394-98ac-9020b6c73fe6&utm_campaign=IP_|_Trademark

[18]
https://www.legalzoom.com/business/intellectual-property/trademark-registration-overview-a.html?gclid=CIr1w9_u7s4CFVRwvAodJXsEHQ
And....
https://www.legalzoom.com/business/intellectual-property/trademark-registration-overviewc.html?utm_source=abandoner&utm_medium=email&utm_campaign=Trademark_Abandoner_2_20170418

of the attorney led service.[19]

73. This wording is written directly above the text falsely states :

"LegalZoom can help. LegalZoom's attorney-led trademark registration services allow you to register a trademark with the help of an attorney. With attorney-led trademark services, an attorney will contact you to learn more about your product or service and begin a comprehensive trademark search. Once an attorney has reviewed your information and prepared your trademark application, he/she will send it to you to approve. Your team of attorneys will be there to answer your questions, monitor the progress of your application, and take action when necessary."[20]

74. The misdirected "peace of mind" landing page in **Exhibit U** further admits to the practice of law when it states "We perform a trademark search, create your trademark application, and file the application with the USPTO. The USPTO will review your application and make a decision whether to approve it or not and you will be notified of their decision" related to the non-attorney service." (**Exhibit U**).

75. Upon reason and belief, LegalZoom intentionally misdirects this traffic to its "peace of mind" service because LegalZoom makes more money from the "peace of mind" service instead of the "attorney led service". Similarly, upon

---

[19] https://www.legalzoom.com/articles/do-you-need-a-lawyer-to-file-a-trademark
[20] https://www.legalzoom.com/articles/do-you-need-a-lawyer-to-file-a-trademark

reason and belief, LegalZoom intentionally misleads customers and the public to deprive Plaintiff LegalForce RAPC Worldwide of equal competition with LegalZoom in order to get higher cost per conversion rates on paid search.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
DECLARATORY JUDGMENT
(Against All Defendants and DOES 1-50)

76.   Plaintiffs incorporate herein by reference paragraphs **1-75** above.

77.   An actual controversy has arisen and now exists between Plaintiffs and Defendants LegalZoom, Liu, Hartman, and Lee regarding LegalZoom's unfair business practices and corporate ownership structure, false advertising, professional negligence, breach of fiduciary duty, and unauthorized practice of law.

78.   An actual controversy has arisen and now exists between Plaintiffs and Defendant USPTO regarding USPTO's rules disallowing Plaintiffs to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service because of advice the Plaintiffs have received through outside counsel. Plaintiffs have sought and received ethics counsel from highly respected USPTO ethics counsel[21],

---

[21] From **Michael McCabe**, attorney specializing in ethics before the USPTO, ABA Business Law Section Professional Responsibility Committee member (2010 – Present)
https://www.ipethicslaw.com/about/michael-mccabe/

California ethics counsel[22], and Arizona ethics counsel[23] informing them they cannot adopt the LegalZoom's "peace of mind" trademark filing service and trademark model of LegalZoom including but not limited to (1) modifying goods and services, (2) selecting trademark classification, (3) paying government fees, (4) signing off rights of privacy, and (5) disclaiming copyrights, and/or (6) signing trademark forms at the USPTO on behalf of end users without conducting conflict checks and without having attorney review and sign off, without risking violations of unauthorized practice of law rules and laws of the USPTO, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas.  Moreover, outside counsel has informed Plaintiffs that the State Bar of California and the USPTO will not likely to provide guidance in advance of changing operating models.

79.  In the alternate, an actual controversy has arisen and now exists between Plaintiffs and Defendant USPTO regarding USPTO's failure to prevent LegalZoom from operating its business for the purpose of filing trademark applications before the USPTO and to be unfairly complicit with LegalZoom by assisting LegalZoom's unauthorized practice of law[1] by knowingly sending to

---

[22] From **Wendy Wen Yun Chang**, past chair of the State Bar of California's Standing Committee on Professional Responsibility and Conduct, member of the American Bar Association's Standing Committee on Ethics and Professional Responsibility, Certified Specialist in Legal Malpractice Law by the State Bar of California's Board of Legal Specialization, and former advisor to the State Bar of California's Commission for the Revision of the Rules of Professional Conduct https://www.hinshawlaw.com/attorneys-Wendy-Chang.html
[23] **Linda C. Shely**, former State Bar of Arizona's Director of Lawyer Ethics for ten years, answering approximately 8000 ethics calls each year and drafting dozens of written ethics advisory opinions published by the Arizona State Bar  Ethics Committee. http://shelylaw.com/lynda-shely/

LegalZoom links to fill out its USPTO forms on behalf of LegalZoom's customers (**Exhibit F**) and sign away rights of LegalZoom's customers while paying   government fees on behalf of LegalZoom's customers using a credit card and/or deposit account directly on the USPTO's website (**Exhibit W**).

80.   An actual controversy has arisen and now exists between Plaintiffs and the State Bar of California  regarding the State Bar of California's rules disallowing Plaintiffs to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service. In the alternate, an actual controversy has arisen and now exists between Plaintiffs and the State Bar of California regarding the State Bar of California's failure to prevent LegalZoom from operating its business for the purpose of filing trademark applications before the USPTO and failure to take action against LegalZoom for unauthorized practice of law.

81.   An actual controversy has arisen and now exists between Plaintiffs and the State Bar of Arizona regarding the State Bar of Arizona's rules disallowing Plaintiffs to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service. In the alternate, an actual controversy has arisen and now exists between Plaintiffs and the State Bar of Arizona regarding the State Bar of Arizona's failure to prevent LegalZoom from operating its business for the purpose of filing

trademark applications before the USPTO and failure to take action against LegalZoom for unauthorized practice of law.

82.   An actual controversy has arisen and now exists between Plaintiffs and the State Bar of Texas  regarding the State Bar of Texas's rules disallowing Plaintiffs to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service.  In the alternate, an actual controversy has arisen and now exists between Plaintiffs and the State Bar of Texas regarding the State Bar of Texas's failure to prevent LegalZoom from operating its business for the purpose of filing trademark applications before the USPTO and failure to take action against LegalZoom for unauthorized practice of law.

83.   As a California licensed law firm and a California licensed attorney, Plaintiffs LegalForce RAPC Worldwide and Raj Abhyanker have built robust practices to conduct conflict checks for client trademark matters, have had to maintain legal malpractice insurance, and have had to employ U.S. licensed attorneys to review and sign off on trademark matters filed before the United States Patent & Trademark Office to avoid unauthorized practice of law challenges to their business.

84.   By not operating as a law firm, upon reason and belief, LegalZoom conducts no conflict checks for client trademark matters, has not had to maintain

legal malpractice insurance, and has not had to employ U.S. licensed attorneys to review and sign off on trademark matters filed before the USPTO to avoid unauthorized practice of law challenges to its business for its non-attorney "peace of mind" non-attorney trademark filing service.

85. Being substantially owned by attorney Raj Abhyanker, Plaintiff LegalForce, Inc. has been unable to adopt the model of LegalZoom for its non-attorney "peace of mind" non-attorney trademark filing service to file trademark applications before the United States Patent & Trademark Office and raise external capital without exposing itself to unauthorized practice of law challenges to its business and Chief Executive Officer Raj Abhyanker. (See **Exhibit Z**).

86. Plaintiffs have sought and received ethics counsel from highly respected USPTO ethics counsel[24], California ethics counsel[25], and Arizona ethics counsel [26] informing them they cannot adopt the LegalZoom's "peace of mind" trademark filing service and trademark model of signing trademark forms at the USPTO on behalf of end users without conducting conflict checks and without

---

[24] From **Michael McCabe**, attorney specializing in ethics before the USPTO, ABA Business Law Section Professional Responsibility Committee member (2010 – Present) https://www.ipethicslaw.com/about/michael-mccabe/
[25] From **Wendy Wen Yun Chang**, past chair of the State Bar of California's Standing Committee on Professional Responsibility and Conduct, member of the American Bar Association's Standing Committee on Ethics and Professional Responsibility, Certified Specialist in Legal Malpractice Law by the State Bar of California's Board of Legal Specialization, and former advisor to the State Bar of California's Commission for the Revision of the Rules of Professional Conduct https://www.hinshawlaw.com/attorneys-Wendy-Chang.html
[26] **Linda C. Shely**, former State Bar of Arizona's Director of Lawyer Ethics for ten years, answering approximately 8000 ethics calls each year and drafting dozens of written ethics advisory opinions published by the Arizona State Bar Ethics Committee. http://shelylaw.com/lynda-shely/

having attorney review and sign off, without risking violations of unauthorized practice of law rules and laws of the USPTO, State Bar of California, the State Bar of Arizona, and the State Bar of Texas.

87.   Plaintiffs have been informed by USPTO, California ethics counsel, and Arizona ethics counsel that the USPTO, the State Bar of California, and the State Bar of Arizona would not provide any advance guidance as to whether Plaintiffs could adopt LegalZoom's non-attorney "peace of mind" trademark filing service model, and the State Bar of California and the USPTO had to date not taken any action against LegalZoom because, upon reason and belief, they are presumably afraid of the financial clout of LegalZoom.   Upon reason and belief, the USPTO knows full well how many U.S. trademarks are processed by LegalZoom as LegalZoom receives a link to sign each trademark through an internal email address of LegalZoom directly from the USPTO, prior to forwarding it on to its customers, and collects government fees directly from LegalZoom's bank accounts.

88.   For this reason, Plaintiffs seek declaratory judgment from this Court because LegalZoom continues to threaten Plaintiffs by outbidding them on online advertising for words related to "trademark filing" and "trademark attorney" with its non-attorney "peace of mind" trademark filing service while Plaintiffs have no recourse to compete without this Court providing clarity via

this declaratory judgment action and instant causes of action.   Plaintiffs have not been able to compete on an equal playing field with LegalZoom with its non-attorney "peace of mind" trademark filing service and are being denied equal protection in practicing their profession and for this reason seek this declaratory judgment.

89.   Upon reason and belief, per the Plaintiffs' ethics counsel[27], the USPTO, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas all refuse to take action against LegalZoom because it is not a law firm and has no lawyers representing clients practicing in a jurisdiction in which they have enforcement powers.   This seems illogical to Plaintiffs as LegalZoom has a co-founder, a Chief Strategy Officer, and Chief Technology Officer Eddie Hartman who is a member of the California Bar (despite never having gone to law school under the "Law Office Study Program", Bar #275,541), co-founder and Chairman Brian P. Y. Liu who is a member of the California Bar (Cal Bar #186,352), and Brian Sung Lee (suspended attorney, Cal Bar #188,280), but the State Bars and USPTO have declined to scrutinize their practice, upon reason

---

[27] From **Wendy Wen Yun Chang**, past chair of the State Bar of California's Standing Committee on Professional Responsibility and Conduct, member of the American Bar Association's Standing Committee on Ethics and Professional Responsibility, Certified Specialist in Legal Malpractice Law by the State Bar of California's Board of Legal Specialization, and former advisor to the State Bar of California's Commission for the Revision of the Rules of Professional Conduct https://www.hinshawlaw.com/attorneys-Wendy-Chang.html , **Linda C. Shely**, former State Bar of Arizona's Director of Lawyer Ethics for ten years, answering approximately 8000 ethics calls each year and drafting dozens of written ethics advisory opinions published by the Arizona State Bar  Ethics Committee. http://shelylaw.com/lynda-shely/ , & **Michael McCabe**, attorney specializing in ethics before the USPTO, ABA Business Law Section Professional Responsibility Committee member (2010 – Present) https://www.ipethicslaw.com/about/michael-mccabe/

and belief.

90.  Plaintiffs seek Declaratory Judgement on the following assertions :

a.    A licensed attorney is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

b.    A licensed law firm is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

c.    A legal technology C corporation organized in any state within the United States substantially owned by one or more California and USPTO licensed attorneys is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay

government fees on behalf of customers who are not represented by a lawyer.

d.    A legal technology C corporation organized in any state within the United States doing business in California and substantially owned by an attorney or a licensed law firm is not required to conduct conflict checks before assisting customers that request filings of U.S. trademarks before the USPTO.

e.    A legal technology C corporation organized in any state within the United States doing business in California and substantially owned by an attorney or licensed law firm is not required to deposit money collected from customers wishing to file U.S. trademarks before the USPTO into an IOLTA trust account on behalf of a customer.

f.    A licensed law firm organized in any state within the United States is permitted to sell ownership in its business to non-lawyer investors.

g.    A foreign law firm organized as an Alternative Business Structure (ABS) law firm in the United Kingdom is permitted to practice law within the United States before the United States Patent & Trademark Office if it hires lawyers in the United States that comply with applicable State Bar and USPTO rules.

h.    A licensed attorney or a law firm is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly

for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

## SECOND CLAIM FOR RELIEF

### UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 of the SHERMAN ACT, 15 U.S.C. §1. (Against All Defendants and DOES 1-50)

91.  Plaintiffs incorporate herein by reference paragraphs **1-90** above.

92.  On February 25, 2015, the Supreme Court handed down its landmark decision in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 135 S. Ct. 1101 (2015) (alternatively, "*Dental Examiners*"). Affirming the decision of the United States Court of Appeals for the Fourth Circuit, the Supreme Court held that a state agency controlled by active market participants in the occupation the agency regulates must be actively supervised by a politically accountable state official in order to enjoy immunity from federal antitrust laws. 135 S. Ct. at 1114. The Supreme Court observed, quite logically, that "[w]hen a state empowers a group of active market participants to decide who can participate in its market, and on what terms, the need for supervision is manifest." *Id.*

93.  The North Carolina State Bar (alternatively, the "State Bar") had hoped for a different ruling in the Dental Examiners case. Like the North Carolina State Board of *Dental Examiners*, the State Bar is a "state agency" composed

primarily of licensed professionals who participate actively in the very market that the State Bar regulates. The State Bar was sufficiently worried about the Dental Examiners case that it filed a "friend of the court" brief in the Supreme Court, arguing that unless the Supreme Court reversed the Fourth Circuit's decision, the State Bar would face antitrust lawsuits based on its unsupervised regulation of the market for legal services. In fact, the State Bar specifically predicted that unless the Supreme Court extended Sherman Act immunity to cover the Dental Board, the State Bar would face the threat of civil liability for treble damages and attorney's fees, and possibly even criminal prosecution, under the federal antitrust laws.[28]

94.  The Supreme Court rejected the State Bar's arguments, instead holding that a "state agency" composed primarily of market participants is immune from antitrust liability <u>only</u> if its anti competitive actions are in pursuit of a clearly articulated state policy and are actively supervised by the state. Reacting to the legal exposure confirmed by the *Dental Examiners* decision, the North Carolina State Bar promptly sponsored legislation that would require the North Carolina Attorney General to "actively supervise" certain of the State Bar's actions taken

---

[28] Brief of North Carolina State Bar et al., available at https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/BriefsV4/13-534_pet_amcu _ncsb-etal.authcheckdam.pdf  (last visited December 15, 2017). LegalZoom, along with other companies and thirteen law professors, filed an amicus brief urging affirmance and explaining how excessive state bar regulation of the market for legal services contributes to the crisis of access to justice and is sometimes abused for anti competitive purposes. Brief of LegalZoom et al., available at http://sblog.s3.amazonaws.com/wp-content/uploads/2014/08/13-534-Shake.pdf  (last visited December 15, 2017).

to enforce its members' monopoly on providing legal services, including the State Bar's actions taken against perceived competitors it claims are engaged in the "unauthorized practice of law."

95. By proposing this legislation the State Bar has expressly conceded that such supervision is necessary for the State Bar to obtain immunity from liability for violating the federal antitrust laws. To date, the State Bar's proposed legislation has not been enacted and remains pending in the North Carolina legislature. Plaintiffs expresses no opinion as to whether the proposed legislation, as drafted, would satisfy the *Dental Examiners* standard.[29]

96. As the North Carolina State Bar predicted, and as the U.S. Supreme Court considered and implicitly held, the unsupervised activities of **any** State Bar are now fully subject to the reaches of the federal antitrust laws. Therefore, Plaintiffs bring this cause of action under the federal antitrust laws to challenge and seek redress from certain anticompetitive, exclusionary, and monopolistic conduct by LegalZoom, USPTO, State Bar of California, State Bar of Texas, State Bar of Arizona and other actors. In the clear absence of state-action immunity, the actions of Defendants, as outlined below, violate the Sherman Act, 15 U.S.C. §§ 1 and 2.

97. Plaintiffs have been compelled to file this lawsuit because Defendants are

---

[29] See Senate Bill 353, North Carolina General Assembly (filed Mar. 31, 2015); Ronald L. Gibson, An Update on Legislation and Litigation, N.C. State Bar J. at 7-8 (Summer 2015).

illegally and unreasonably restraining trade in the market for federal trademark application legal services, including delivery through online websites, in California, Arizona, Texas, and in all states before the United States Patent & Trademark Office (the "Relevant Market").

98.  Specifically, LegalZoom is illegally and unreasonably excluding Plaintiffs from offering similar services by its own public statements on YouTube.  Specifically, LegalZoom's CEO John Suh has admitted that there is unfair competition between lawyers (e.g., such as Plaintiffs) and LegalZoom, saying that "**I can destroy innovation and disruption** if I take two elements away #1 capital, and #2 a team."[30]  LegalZoom's CEO John Suh went on to say seconds later that "the legal industry does not allow law firms to raise capital", and "it does not allow them to recruit non-lawyers to the cause"[31]  and boasting "it will be impossible without those two elements"[32] for lawyers to compete with LegalZoom which uniquely has both these "elements."

99.  In addition, the USPTO unfairly conspired, and continues to conspire, with LegalZoom by assisting LegalZoom in maintaining its unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 by knowingly sending to LegalZoom links to fill out its USPTO forms on behalf of

---

[30] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=9m34s
[31] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=10m18s
[32] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=10m36s

LegalZoom customers (**Exhibit F**) and sign away rights of LegalZoom customers while paying  government fees on behalf of LegalZoom's customers using a credit card and/or deposit account directly on the USPTO website (**Exhibit W**).

100.   In addition, the USPTO is unfairly conspiring with LegalZoom to violate Section 1 of the Sherman Act, 15 U.S.C. §1 because it has not provided any guidance to Plaintiffs or anyone else permitting Plaintiffs to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service, all the while turning a blind eye to LegalZoom.

101.   The State Bar of California is unfairly conspiring with LegalZoom to violate Section 1 of the Sherman Act, 15 U.S.C. §1 because it has not provided any guidance to Plaintiffs or anyone else permitting them to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service, all the while turning a blind eye to LegalZoom.

102.   The State Bar of Arizona is unfairly conspiring with LegalZoom to violate Section 1 of the Sherman Act, 15 U.S.C. §1 because it has not provided any guidance to the Plaintiffs or anyone else permitting them to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney

"peace of mind" trademark filing service, all the while turning a blind eye to LegalZoom.

103.    The State Bar of Texas is unfairly conspiring with LegalZoom to violate Section 1 of the Sherman Act, 15 U.S.C. §1 because it has not provided any guidance to the Plaintiffs or anyone else permitting them to operate as a trademark filing service in the same manner as LegalZoom with its non-attorney "peace of mind" trademark filing service, all the while turning a blind eye to LegalZoom.

104.    Defendants are illegally and unreasonably excluding Plaintiffs from offering trademark filing services without the assistance of an attorney in this state, in violation of the Sherman Antitrust Act.

105.    The USPTO, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas have and exercise the power to exclude lawyers and nonlawyers from competing in the Relevant Market in various ways.

106.    Although designated state agencies, upon reason and belief, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas in fact are controlled by private individuals who actively participate in the Relevant Market. This group of active market participants regulate the Relevant Market, exercising the limited power granted by the Legislature, as well as power that the Legislature has not granted.

107.   For years, upon reason and belief, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas, by and through their agents and Council members, have engaged in unsupervised anticompetitive activity under the guise of regulating the "unauthorized practice of law." In doing so, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas, like the North Carolina State Board of Dental Examiners before them, regularly exceed their grant of legislative authority by engaging in misleading "cease and desist" letter campaigns designed to intimidate and bully licensed lawyers within their own jurisdiction into ceasing activities that they permit LegalZoom to provide.

108.   The USPTO, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas have also engaged in unauthorized and anticompetitive conduct illegally and unreasonably restraining trade in the Relevant Market by enforcing their rules unfairly against licensed lawyers within their jurisdictions but not against LegalZoom.

109.   Defendants' anticompetitive activity is not, and has not been, in pursuit of a clearly articulated state or federal policy; indeed, it has been in direct contravention of that policy. In addition, Defendant Legal Zoom's anticompetitive conduct is, and has been, wholly unsupervised by the USPTO, the State Bar of California, the State Bar of Arizona, and the State Bar of Texas. The USPTO, the State Bar of California, the State Bar of Arizona, and the State

Bar of Texas's anticompetitive conduct exceeds their statutory authority. Therefore, Defendants' conduct is not entitled to immunity from the federal antitrust laws.

110.   Defendants' unlawful and unreasonable exclusion of licensed lawyers from performing services, the way LegalZoom does in the Relevant Market, has injured competition in the Relevant Market and caused Plaintiffs to lose more than twenty million dollars ($20,000,000) of sales in the Relevant Markets. Plaintiffs brings this lawsuit to recover from Defendants' actual and treble damages under the Sherman Act, totaling more than sixty million dollars ($60,000,000), exclusive of fees and costs.   Plaintiffs also seek permanent injunctive relief as described herein.

111.   Defendants' activities and the conduct of Defendants and their co-conspirators occurred in and/or affected a substantial portion of interstate commerce, including trade and commerce to, from, and within this District.

112.   As described above, beginning at least as early as September 2010 and continuing through at least December 2017, Defendants and their co-conspirators entered into a continuing agreement, understanding, combination and/or conspiracy in restraint of trade, resulting in harm both to competition generally and to Plaintiffs specifically, in violation of Section 1 of the Sherman Act.

113.   Defendants' refusal to permit Plaintiffs to operate in the same manner as LegalZoom constitutes a boycott, a collective refusal to deal with LegalZoom's unauthorized practice of law and exclusion of a competitor from the Relevant Market by Market Participants with market power, and thus is a per se antitrust violation. In the alternative, Defendants' refusal to permit Plaintiffs from operating in the same way as LegalZoom with respect to federal trademark matters constitutes an unreasonable restraint of trade.

114.   Defendants' unlawful combination and conspiracy injured competition in the Relevant Market and proximately caused Plaintiffs economic loss and damages by their refusal to permit Plaintiffs from operating the same way as LegalZoom with respect to federal trademark matters.

**THIRD CLAIM FOR RELIEF**
FEDERAL FALSE & MISLEADING ADVERTISING AND UNFAIR
COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C.. §
1125(a)
(Against LegalZoom, Liu, and Hartman and DOES 1-50)

115.   Plaintiffs incorporate herein by reference paragraphs **1-114** above.

116.   The Lanham Act prohibits any false description or representation, including words or other symbols tending falsely to describe or represent the same, made in connection with any goods or services entered into commerce.

117.   LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.  LegalZoom is not a registered or bonded legal

document assistant under California Business and Professions Code, sections §6400 et seq.   (**Exhibit M**, highlighted).

118.   Despite this, LegalZoom's CEO John Suh has recently falsely implied that in its "chapter 3" of LegalZoom's corporate evolution, it can provide legal services in the United States after it became a law firm in United Kingdom in 2015 when he stated as much in an Ernst & Young interview[33] and a similar interview with a customer Bill Carmody in the United States[34] less than a month earlier.   Suh even falsely explained that LegalZoom's "chapter 3" foreign law firm structure as permitting practice of law in the United States to the New Hampshire Bar boasting that they have spent two years advertising their new "law firm" structure and how certain practice areas are entirely done with a lawyer.[35]   In reality, LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom has become a law firm in the United Kingdom only after acquiring a law firm in that country following deregulation of ownership of law firms in the United Kingdom in 2012. (**Exhibit G**).

119.   The Lanham Act prohibits false and misleading advertising and prohibits advertisers like LegalZoom from making any claim, and directly or

---

[33] LegalZoom exec reflects on the company's evolution, on November 16, 2016, https://www.youtube.com/watch?v=ORbZcMmDJOs&t=2m11s
[34] John Suh, CEO of LegalZoom interview with Bill Carmody on October 21, 2016, https://www.youtube.com/watch?v=aOKFr2XTbsE&t=12m52s
[35] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=4m31s

indirectly, in words or in substance, qualified or unqualified, that contain express or implied falsehoods.

120.   LegalZoom has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers and unfairly competing with Plaintiffs for the keywords "trademark filing attorney", "trademark lawyer", and Plaintiffs' trademark business and personal names including "LegalForce" and "Raj Abhyanker" among hundreds of other keywords.   The conduct is unfair and unethical because LegalZoom makes a number of false and misleading statements in its advertising copy.

121.   As described above, LegalZoom has made false and/or misleading statements of fact concerning the "attorney" nature of its services and products in its online advertising and promotion, including but not limited to:

A.   Representing that customers can "Speak to an Attorney" and "Avoid Costly Conflicts" while bidding on keywords including "trademark attorney", "trademark lawyer", "legalforce", and "legalforce trademarks", and misdirecting users to their $199 "peace of mind" non-attorney guided trademark filing service.

B.   Representing that customers can "Speak to an Attorney" in paid search ad copy when, in fact, customers must first sign up for LegalZoom's legal plan, which automatically renews for $29.99 a month.

122.   LegalZoom uses the search terms "LegalForce", "Raj Abhyanker" or "Trademarkia" to redirect customers to LegalZoom's false and misleading advertisements and to disseminate such false and misleading advertisements in interstate commerce, and at least ones directed toward Raj Abhyanker personally are defamatory in the sense that it purports to falsely imply that Raj Abhyanker is associated with "costly conflicts."   As a result, LegalZoom has widely disseminated such false and misleading advertisements via the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Lanham Act.

123.   LegalZoom's non-attorney trademark document specialists in its $199 "peace of mind" service unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

124.   LegalZoom's false and misleading advertisements have deceived a substantial segment of the audience exposed to it, or have the capacity for such deception, and have influenced, or are likely to influence, consumer purchasing decisions.

125.   LegalZoom sells, offers for sale, distributes, and/or advertises goods and services to consumers that directly compete with Plaintiffs' sales of their

own services and products.

126.   LegalZoom's conduct demonstrates an intentional, willful, and malicious intent to deceive consumers and unfairly compete with Plaintiffs.

127.   LegalZoom's false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law.   In addition, as a result of LegalZoom's false and misleading advertisements, Plaintiffs have been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages.  Furthermore, LegalZoom has been unjustly enriched at the expense of Plaintiffs as a consequence of LegalZoom's false and misleading advertising.   Accordingly, Plaintiffs are entitled to injunctive relief and to recover actual damages, enhanced profits and damages, costs, LegalZoom's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

128.   Defendants Liu, Hartman, and Lee have unfairly competed with Plaintiffs because they are practitioners who have created a professional corporation (LegalZoom) which is practicing law for a profit with shareholders who are non-practitioners in violation of CFR §11.504.

129.   Upon reason and belief, Defendants Lee has also unfairly competed as a suspended California attorney as of 1999 who formed his corporation

LegalZoom.com, Inc. with Liu and Hartman in 2007 (continuing former corporation LegalZoom Delaware, Inc. formed while Lee was still suspended in 2000) while profiting indirectly as a shareholder from the over two-hundred fifty thousand (250,000) trademarks filed with the United States Patent & Trademark Office through the LegalZoom website.   Suspended attorney Lee has admitted being the "worst lawyer" and "talk to anyone I did work for" and "you could come to me with a parking ticket, [and] you would end up in jail" and further admitting "you have to be detail oriented to be a good lawyer, and I am not that detail oriented." [36]

### FOURTH CLAIM FOR RELIEF
CALIFORNIA FALSE & MISLEADING ADVERTISING IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17500 *ET SEQ.* and § 17600 *ET SEQ.*
(Against LegalZoom, Liu, and Hartman and DOES 1-50)

130.   Plaintiffs incorporate herein by reference paragraphs **1-129** above.

131.   At all relevant times herein mentioned, LegalZoom is a corporation doing business at 101 N. Brand Blvd., Glendale CA 91203.

132.   LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.   (**Exhibit M**, highlighted).

133.   Despite this, LegalZoom's CEO John Suh has recently falsely implied

---

[36] PandoDaily, May 11, 2013,  https://www.youtube.com/watch?v=RE5HxiLpxd0&t=8m00s.

that in its "chapter 3" of LegalZoom's corporate evolution, it can provide legal services in the United States after it became a law firm in United Kingdom in 2015 when he stated as much in an Ernst & Young interview[37] and a similar interview with a customer Bill Carmody in the United States[38] less than a month earlier.   Suh even falsely explained that LegalZoom's law firm structure in the United Kingdom enables the company to practice law in the United States to the New Hampshire Bar while also boasting that LegalZoom has spent two years advertising their new "law firm" structure and how certain practice areas are entirely done with a lawyer.[39]     In reality, LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom has become a law firm in the United Kingdom only after acquiring a law firm in that country following deregulation of ownership of law firms in the United Kingdom in 2012.   (**Exhibit G**).

134.   LegalZoom has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers searching Google and Bing for "trademark attorney" and "trademark lawyer" to non-attorney "peace of mind" trademark landing pages.   This creates unfair competition for Plaintiffs which file all trademarks of their clients before the USPTO with representation by

---

[37] LegalZoom exec reflects on the company's evolution, on November 16, 2016, https://www.youtube.com/watch?v=ORbZcMmDJOs&t=2m11s
[38] John Suh, CEO of LegalZoom interview with Bill Carmody on October 21, 2016, https://www.youtube.com/watch?v=aOKFr2XTbsE&t=12m52s
[39] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=4m31s

licensed attorneys at LegalForce RAPC Worldwide's offices, in either California or Arizona.   The conduct is unfair and unethical because LegalZoom makes a number of false and misleading statements in its advertising copy.

135.   Beginning on a date unknown to Plaintiffs but likely within at least the last three (3) years preceding the filing of the Complaint, LegalZoom, acting directly or indirectly with the intent to induce members of the public to engage LegalZoom's services and purchase LegalZoom's products, made or caused to be made, in violation of Business and Professions Code Section §17500, untrue or misleading statements in the state of California via its website, that include, but are not limited to, the following:

A.    Representing that customers can "Speak to an Attorney" and "Avoid Costly Conflicts" while bidding on keywords including "trademark attorney", "trademark lawyer", "legalforce", and "legalforce trademarks", while misdirecting users to their $199 "peace of mind" non-attorney guided trademark filing service.

B.     Representing that customers can "Speak to an Attorney" in paid search ad copy when, in fact, customers must first sign up for LegalZoom's legal plan, which automatically renews for $29.99 a month.   Representing that customers can "Speak to an Attorney" when, in fact, access to the "help form an attorney" are available only after customers become paid members of LegalZoom's legal

plan.   This membership requirement for the "Speak to an Attorney" is **not** disclosed anywhere on the Google AdWords advertisements.   Moreover, this membership requirement is not in close proximity to the advertisements in landing page button for "Start My Trademark" and appears below the fold on most monitor screens in small print.  (**Exhibit A, Exhibit B, Exhibit C, and Exhibit O**).

C.     There is no disclosure in a "clear and conspicuous" manner in the advertising copy on Google AdWords text in visual proximity of the content that in order to "Speak to an Attorney" one must become a paid member of LegalZoom's Legal Plan which is in violation of Section §17602(a)(1) of the Business and Professions Code.  (**Exhibit A, Exhibit B, Exhibit C, and Exhibit O**).

136.   While using Plaintiffs' AdWords to trigger and disseminate the advertisements herein alleged, LegalZoom knew, or by the exercise of reasonable care should have known, that the advertisements were untrue and misleading and so acted in violation of Section §17500 of the Business and Professions Code.  LegalZoom's advertising further violates Section §17509 and Section §17600 *et seq.* in that the advertisements herein alleged require, as a condition to the  "Speak to an Attorney", the purchase of paid membership and/or the enrollment in a trial membership plan subject to a negative option

without adequate disclosure to customers.

137.   LegalZoom's non-attorney trademark document specialists in its $199 "peace of mind" service unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the USPTO, and filing trademarks before the USPTO.

138.   LegalZoom has been unjustly enriched through its false and misleading advertising.

139.   Plaintiffs have lost business caused by the false and misleading LegalZoom advertisements as a result of at least one customer refusing to do business with LegalZoom due to the fact that LegalZoom advertisements falsely implying that LegalZoom offers trademark filing services with the USPTO with the assistance of an attorney for their $199 "peace of mind review" service.

140.   Unless restrained by this court, LegalZoom will continue with its untrue and misleading advertising, as alleged above, in violation of Section §17500 of the Business and Professions Code and in violation of Section §17509 of the California Business and Professions Code, thus, tending to render judgment in the instant action ineffectual and will cause additional injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

141.   Pursuant to California Business and Professions Code Section §17500, Plaintiffs seek an order of this Court preliminarily and permanently enjoining

LegalZoom from continuing to engage in the false and misleading advertising set forth herein, as well as compensatory damages and restitution.

142.   LegalZoom's non-attorney trademark document specialists in its $199 "peace of mind" service unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the USPTO, and filing trademarks before the USPTO.

143.   LegalZoom's business practices and acts, fully described above, constitute an unlawful practice of law and create false and misleading impressions on potential clients of Plaintiff LegalForce RAPC Worldwide.

144.   LegalZoom's business model and acts, including but not limited to its website and false and misleading advertising, constitute unfair practices, intentionally aimed at getting ahead of any competitors with lawful business conduct such as LegalForce. The acts alleged herein continue to present a threat to LegalForce and average consumers, especially the ones with limited resources.

145.   LegalZoom's acts were, and are, likely to deceive an average consumer, and thus constitute unfair business practices as described herein.

146.   If Declaratory Judgment in not awarded permitting Plaintiffs to prepare, review and advise customers on trademarks to be filed before the USPTO office as described above, then:

a.   LegalZoom has engaged in unlawful, unfair and fraudulent business practices and damaged the public and Plaintiffs through the conduct alleged herein.

b.    Plaintiffs are informed, believe, and thereupon allege that LegalZoom's conduct as described herein was, and is, unlawful, unfair and/or fraudulent in violation of Section §17000 *et. sq.* of the California Business and Professions Code and has the potential to cause, and has in fact caused, confusion in the marketplace.

c.    Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of LegalZoom's unlawful acts unless enjoined by this Court.

d.    The conduct herein complained of was extreme, outrageous, surreptitious, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights.

e.   Plaintiffs are entitled to an injunction restraining LegalZoom, and all persons acting in concert with them, from engaging in such further acts of unfair competition, including:

i.    Enjoining non-lawyer assistants of LegalZoom to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers and pay government fees on behalf of customers who are not represented by a lawyer.

ii.    Enjoining LegalZoom from purchasing misleading advertising related to

"trademark attorney", "trademark lawyer", and related keywords for non-attorney "peace of mind" trademark filing services offered by LegalZoom with respect to U.S. trademark matters.

**FIFTH CLAIM FOR RELIEF**
CALIFORNIA UNFAIR COMPETITION IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
(Against LegalZoom, Liu, and Hartman and DOES 1-50)

147.   Plaintiffs incorporate herein by reference paragraphs **1-146** above.

148.   LegalZoom's false comparisons with Plaintiffs' attorney managed U.S. trademark service as being comparable to LegalZoom's non-attorney "peace of mind" service through misleading advertising, as alleged above, constitute unfair competition in violation of Section §17200 *et seq.* of the California Business and Professions Code.

149.   LegalZoom intentionally uses the search terms "LegalForce" and "Trademarkia" to trigger sponsored links and to redirect customers to LegalZoom's false and misleading advertisements, which deceptively advertise among other things, "Avoid Costly Conflicts", "File Your Application With the Help Of An Independent Trademark Attorneys", and "Speak to an Attorney".

150.   Plaintiffs are informed and believe that LegalZoom, as a competitor to Plaintiffs, performed the acts alleged herein for the purpose of injuring Plaintiffs. The acts alleged herein continue to this day and present a threat to Plaintiffs, the

general public, the trade and consumers.

151.   As a result of LegalZoom's wrongful acts, Plaintiffs have suffered and will continue to suffer loss of tens of millions of dollars of income, profits and valuable business opportunities and if not preliminarily or permanently enjoined, LegalZoom will have unfairly derived and will continue to derive income, profits and business opportunities as a result of its wrongful acts.

152.   Pursuant to California Business and Professions Code Section §17200 *et seq.*, Plaintiffs seek an order of this Court preliminarily and permanently enjoining LegalZoom from continuing to engage in the unlawful, unfair and fraudulent acts or practices set forth herein, as well as restitution.

**SIXTH CLAIM FOR RELIEF**
PROFESSIONAL NEGLIGENCE
(Against Defendants LegalZoom, Liu, Hartman, and Lee and DOES 1-50)

153.   Plaintiffs incorporate herein by reference paragraphs **1-152** above.

154.   LegalZoom's CEO John Suh has recently falsely implied that in its "chapter 3" of LegalZoom's corporate evolution, it can provide legal services in the United States after it became a law firm in United Kingdom in 2015 when he stated as much in an Ernst & Young interview[40] and a similar interview with a customer Bill Carmody in the United States[41] less than a month earlier.   Suh

---

[40] LegalZoom exec reflects on the company's evolution, on November 16, 2016, https://www.youtube.com/watch?v=ORbZcMmDJOs&t=2m11s
[41] John Suh, CEO of LegalZoom interview with Bill Carmody on October 21, 2016, https://www.youtube.com/watch?v=aOKFr2XTbsE&t=12m52s

even falsely explained that LegalZoom's law firm structure in the United Kingdom enables the company to practice law in the United States to the New Hampshire Bar while also boasting that LegalZoom has spent two years advertising their new "law firm" structure and how certain practice areas are entirely done with a lawyer.[42]   In reality, LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom has become a law firm in the United Kingdom only after acquiring a law firm in that country following deregulation of ownership of law firms in the United Kingdom in 2012.   (**Exhibit G**).

155.   In addition, upon reason and belief, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee owed a duty to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide when they collected more than $1000 in legal service and government fees from Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide without depositing the funds into an IOLTA trust account and conducting a conflict check against existing customers and adverse parties for the DRAWMARKIA and PIGGIEBANK trademarks through a corporation they formed, and in which they are substantial individual shareholders, LegalZoom, Inc.

156.   LegalZoom, attorney Liu, attorney Hartman, and suspended attorney

---

[42] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=4m31s

Lee have breached that duty by purposefully engaging in the unauthorized practice of law with respect to the filing of the DRAWMARKIA and PIGGIEBANK trademarks on behalf of Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide respectively while falsely implying that no legal advice was to be received in the $199 "peace of mind" trademark filing service linked to a Google advertisements falsely implying that attorney help will be provided.

157. Moreover, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee breached their duty to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide by not supervising non-lawyer assistants Will, Alex, Robert who provided legal advice including classification selection, description of goods and services modification, search report preparation, and search report analysis for the federal trademark applications for DRAWMARKIA and PIGGIEBANK.

158. In addition, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee and DOES 1-50, each of them owed a duty to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide to act at all times in good faith and in Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide's best interests, and had a duty, among other things, to perform the services for which their corporate entity LegalZoom was retained with reasonable care and skill to

prepare and file the DRAWMARKIA and PIGGIEBANK trademarks, to act in the Plaintiffs' highest and best interests at all times, and to not expose Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide to unnecessary risk or peril.

159. By providing legal advice in the selection of classification and description of goods and services to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide using non-lawyer assistants (**Exhibit D**), Defendants exposed Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide to risk or peril for their DRAWMARKIA trademarks as described by the USPTO webpage titled "Proper representation in trademark matters" (**Exhibit A**), including but not limited to (1) delaying and prolonging in the trademark application process, potentially leading to abandonment of the DRAWMARKIA and PIGGIEBANK applications, and jeopardizing the validity of any resulting registration.

160. LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee each breached their neglected fiduciary duties to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers. Specifically, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee each failed to supervise a non-practitioner assistant employed or retained by or

associated with LegalZoom while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

161.   LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee have also committed professional negligence as attorneys with duties owed to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide with regards to the DRAWMARKIA and PIGGIEBANK trademark applications because they are practitioners who have created a professional corporation (LegalZoom) which is practicing law for a profit with shareholders who are non-practitioners in violation of CFR §11.504.

162.   Upon reason and belief, Defendants Lee has also committed professional negligence as a suspended California attorney as of 1999 who formed his corporation LegalZoom.com, Inc. with Liu and Hartman in 2007 (continuing former corporation LegalZoom Delaware, Inc. formed while Lee was still suspended in 2000) while profiting indirectly as a shareholder from the DRAWMARKIA and PIGGIEBANK marks filed with the United States Patent & Trademark Office by Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide through LegalZoom.

163.   At all times mentioned here, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee failed to exercise the required standard of

care and by failing have jeopardized the validity of the Plaintiffs' DRAWMARKIA and PIGGIEBANK trademarks.

164.   Further, as a direct and proximate result of the negligence, omissions, and/or intentional acts of LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee, Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide have sustained damages, among other things loss in legal fees paid to LegalZoom in the amount of $199 and other amounts which will be determined according to proof at trial.

## SEVENTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTIES
### (Against Defendants LegalZoom, Liu, Hartman, and Lee, and DOES 1-50)

165.   Plaintiffs incorporate herein by reference paragraphs **1-164** above.

166.   LegalZoom's CEO John Suh has recently falsely implied that in its "chapter 3" of LegalZoom's corporate evolution, it can provide legal services in the United States after it became a law firm in United Kingdom in 2015 when he stated as much in an Ernst & Young interview[43] and a similar interview with a customer Bill Carmody in the United States[44] less than a month earlier.   Suh even falsely explained that LegalZoom's law firm structure in the United Kingdom enables the company to practice law in the United States to the New

---

[43] LegalZoom exec reflects on the company's evolution, on November 16, 2016, https://www.youtube.com/watch?v=ORbZcMmDJOs&t=2m11s
[44] John Suh, CEO of LegalZoom interview with Bill Carmody on October 21, 2016, https://www.youtube.com/watch?v=aOKFr2XTbsE&t=12m52s

Hampshire Bar while also boasting that LegalZoom has spent two years advertising their new "law firm" structure and how certain practice areas are entirely done with a lawyer.[45]   In reality, LegalZoom is not a law firm in the United States and is not authorized to practice law in any state.   LegalZoom has become a law firm in the United Kingdom only after acquiring a law firm in that country following deregulation of ownership of law firms in the United Kingdom in 2012.   (**Exhibit G**).

167.   Upon reason and belief, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee breached their fiduciary duty to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide when they collected more than $1000 in legal service and government fees from Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide without depositing funds into an IOLTA trust account and conducting a conflict check against existing customers and adverse parties for the DRAWMARKIA and PIGGIEBANK trademarks through a corporation they formed and in which they are substantial individual shareholders, LegalZoom, Inc.

168.   In addition, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee have breached a fiduciary duty by purposefully engaging in the unauthorized practice of law with respect to the filing of the

---

[45] New Hampshire Bar Association Midyear Meeting held in Manchester, NH, on March 4, 2016, https://www.youtube.com/watch?v=ClBpYWcc6jU&t=4m31s

DRAWMARKIA and PIGGIEBANK trademarks on behalf of Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide respectively while falsely implying that no legal advice was to be received in the $199 "peace of mind" trademark filing service linked to a Google advertisements falsely implying that attorney help will be provided.

169.   Moreover, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee breached their fiduciary duty to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide by not supervising non-lawyer assistants Will, Alex, and Robert who provided legal advice including classification selection, description of goods and services modification, search report preparation, and search report analysis for the federal trademark applications for DRAWMARKIA and PIGGIEBANK.

170.   In addition, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee and DOES 1-50, each of them owed a fiduciary duty to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide to act at all times in good faith and in their best interests, and had a duty, among other things, to perform the services for which their corporate entity LegalZoom was retained with reasonable care and skill to prepare and file the DRAWMARKIA and PIGGIEBANK trademarks, to act in the Plaintiffs' highest and best interests at all times, and to not expose Plaintiffs Raj Abhyanker and LegalForce RAPC

Worldwide to unnecessary risk or peril.

171. By providing legal advice in the selection of classification and description of goods and services to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide using non-lawyer assistants (**Exhibit D**), Defendants exposed Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide to risk or peril for their DRAWMARKIA trademark as described by the USPTO webpage titled "Proper representation in trademark matters" (**Exhibit A**), including but not limited to (1) delay and prolong in the trademark application process, potentially leading to abandonment of the DRAWMARKIA and PIGGIEBANK trademark applications, and jeopardizing the validity of any resulting registration.

172. Defendants LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee each breached their neglected fiduciary duties to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers.   Specifically, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee each failed to supervise a non-practitioner assistant employed or retained by or associated with LegalZoom while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

173.  Defendants LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee have also breached their fiduciary duties as attorneys with duties owed to Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide because they are practitioners who have created a professional corporation (LegalZoom) which is practicing law for a profit with shareholders who are non-practitioners in violation of CFR §11.504.

174.  Upon reason and belief, Defendant Lee has also breached his fiduciary duties as a suspended California attorney as of 1999 who formed his corporation LegalZoom.com, Inc. with Liu and Hartman in 2007 (continuing former corporation LegalZoom Delaware, Inc. formed while Lee was still suspended in 2000) while profiting indirectly as a shareholder from the DRAWMARKIA and PIGGIEBANK marks filed with the United States Patent & Trademark Office by Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide through LegalZoom.

175.  At all times mentioned here, LegalZoom, attorney Liu, attorney Hartman, and suspended attorney Lee failed to exercise the required standard of care and by failing to have jeopardized the validity of the DRAWMARKIA and PIGGIEBANK trademark applications.

176.  Further, as a direct and proximate result of the negligence, omissions, and/or intentional acts of LegalZoom, attorney Liu, attorney Hartman, and

suspended attorney Lee, Plaintiffs Raj Abhyanker and LegalForce RAPC Worldwide have sustained damages, among other things loss in legal fees paid to LegalZoom in the amount of $199 and other amounts which will be determined according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment as follows:

1. Plaintiffs seek Declaratory Judgement on the following assertions:

   a.

   a. A licensed attorney is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

   b. A licensed law firm is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

c. A legal technology C corporation organized in any state within the United States substantially owned by one or more California and USPTO licensed attorneys is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

d. A legal technology C corporation organized in any state within the United States doing business in California and substantially owned by an attorney or a licensed law firm is not required to conduct conflict checks before assisting customers that request filings of U.S. trademarks before the USPTO.

e. A legal technology C corporation organized in any state within the United States doing business in California and substantially owned by an attorney or licensed law firm is not required to deposit money collected from customers wishing to file U.S. trademarks before the USPTO into an IOLTA trust account on behalf of a customer.

f. A licensed law firm organized in any state within the United States is permitted to sell ownership in its business to non-lawyer investors.

g. A foreign law firm organized as an Alternative Business Structure (ABS) law firm in the United Kingdom is permitted to practice law within the United States before the United States Patent & Trademark Office if it hires lawyers in the United States that comply with applicable State Bar and USPTO rules.

h. A licensed attorney or a law firm is permitted to employ non-lawyer assistants to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers, and pay government fees on behalf of customers who are not represented by a lawyer.

2.   In the alternate,

a. Order compelling the USPTO to modify its "E-Signature(s) Request Form" (**Exhibit F**) and Pay Government Fees form (**Exhibit W**) to prevent companies and persons engaging in the unauthorized practice of law facilitated through the use this form by filling out USPTO forms, and receiving USPTO trademark signature links on behalf of unrepresented customers.

b. Temporary and permanent injunctions as defined herein be entered in their favor and against Defendants LegalZoom, and any company or

entity in which LegalZoom has an ownership or beneficial interest, first temporarily and then permanently restraining and enjoining them, directly or indirectly, on their own or as a partner, or an employee from operating websites known as www.legalzoom.com or any other website that attempts to offer U.S. trademark filing and prosecution services including office actions, statements of use, oppositions, trademark watch, renewal, opposition, and litigation services.

c.  From further use of Plaintiffs' Trademarks as Internet search terms or otherwise to trigger sponsored links to LegalZoom's false and misleading advertisements implying that not doing conflict checks is a benefit to consumers.

d.  From further acts of false and misleading advertising and unfair competition that would damage or injure Plaintiffs.

e.  The Court find LegalZoom's acts of false and misleading advertising and unfair competition to be knowing and willful, and an exceptional case within the meaning of 15 U.S.C. §1117 and California law.

f.  Restitution as allowed under applicable statutes.

g.  Compensatory damages in an amount believed to be in excess of twenty million dollars ($20,000,000) to be determined at trial. Plaintiffs' damages are continuing each day as they are unable to

compete fairly due to Defendants' unlawful actions, and they will seek treble recovery of all additional damages they incur during the pendency of this lawsuit.

h. Punitive damages in an amount to be determined at trial.

i. Legal and equitable further relief as this court finds just and proper.

j. Permanent exclusion from practice of law in California and before the USPTO of Defendants LegalZoom, Brian P Y Liu, Edward Richard Hartman, and Brian S. Lee.

k. Order compelling the USPTO to follow its stated procedures for notification to affected applicants of an excluded marks for all trademarks in which government fees were paid by the excluded party (**Exhibit X**) including, but not limited notifications to the affected applicant or registrant that:

   i.   LegalZoom is not entitled to practice before the USPTO in trademark matters and, therefore, may not represent the applicant or registrant.

   ii.  Any trademarks and documents filed by LegalZoom are *void ab initio*, meaning they were invalid from the start of any action taken by the excluded party.

   iii. LegalZoom may not sign checkboxes, pay government fees,

prepare trademark applications, assist with responses to the USPTO's actions, authorize examiner's amendments or priority actions, conduct interviews with USPTO employees, or otherwise represent an applicant, registrant, or party to a proceeding before the USPTO.

iv. All correspondence concerning the application or registration will be sent to the domestic representative if one has been appointed, or, alternatively, and in most circumstances, to the applicant or registrant at his/her address of record.

3.    Plaintiffs be awarded costs, prejudgment interest and attorneys' fees pursuant to 15 U.S.C. Code § 1117 of the Lanham Act for exceptional case, 15 U.S.C. § 15(a), and other applicable statutes.


Respectfully submitted this Tuesday December 19th, 2017.


LEGALFORCE RAPC WORLDWIDE P.C.


/s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker

## JURY TRIAL DEMAND

Plaintiffs hereby request a bench trial for the declaratory judgement and injunction causes of action, and a jury trial for all other causes of action alleged in this Complaint.


Respectfully submitted this Tuesday December 19th, 2017.


LEGALFORCE RAPC WORLDWIDE P.C.


By   /s/ Raj V. Abhyanker_____
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker