IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>LEGALZOOM.COM, INC., et al.,<br><br>Defendants. | Case No. 17-cv-07194-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION; STAYING LEGALFORCE RAPC WORLDWIDE'S CLAIMS AGAINST LEGALZOOM.COM, INC.**<br><br>Re: Dkt. No. 60 |

Before the Court is defendant LegalZoom.com, Inc.'s ("LegalZoom") "Motion to Compel Arbitration," filed February 20, 2018. Plaintiffs LegalForce RAPC Worldwide, P.C. ("LegalForce RAPC") and LegalForce Inc. ("LegalForce") have filed opposition,[1] to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court hereby rules as follows.[2]

**BACKGROUND**

According to the operative complaint, the First Amended Complaint ("FAC"), LegalForce RAPC is a law firm that "practices patent and trademark law before the USPTO [United States Patent and Trademark Office]" (see FAC ¶ 16), LegalForce is a corporation "offering law firm automation and free trademark search services through its website Trademarkia.com" (see FAC ¶ 4), and LegalForce RAPC is the "sole provider of

---

[1] The opposition was also filed on behalf of Raj V. Abhyanker ("Abhyanker"), who, at that time, was a named plaintiff. After the motion had been briefed, plaintiffs filed a notice dismissing Abhyanker's claims. (See Notice, filed March 22, 2018.) Consequently, to the extent the motion seeks an order compelling Abhyanker to arbitrate his claims, the motion is moot.

[2] By order filed April 2, 2018, the Court took the matter under submission.

legal services through the website Trademarkia.com with respect to trademark filings before the USPTO" (see FAC ¶ 17).

Plaintiffs allege that LegalZoom engages in "acts of preparing and filing trademarks" (See FAC ¶ 15) and that, "[a]lthough LegalZoom represents on its website that it does not practice law, this representation is false and/or misleading" (see FAC ¶ 63). In particular, plaintiffs allege, when a "trademark filing request is made on the LegalZoom website," LegalZoom then "surreptitiously practices law" (see id.), even though it is "not a law firm in the United States and is not authorized to practice law in any state" (see FAC ¶ 6). In support of said allegation, plaintiffs allege that "[p]laintiffs filed two trademark applications through the LegalZoom website" (see FAC ¶ 60), and, with respect to both applications, "LegalZoom provided legal advice to [p]laintiffs by selecting [a trademark] classification and modifying the goods and services description from [a] template thereby applying specific fact to law" (see FAC ¶ 62); plaintiffs further allege that, with respect to one of the marks, "LegalZoom provided legal advice as to which trademarks found in [a] search report may conflict with [plaintiffs' mark]" (see id.).

Plaintiffs also allege that LegalZoom "purchases advertisements whenever consumers search terms related to the practice of law," such as "trademark attorney" and "trademark lawyer," and that the "advertising copy in the resulting advertisements is highly misleading, causing a consumer to believe that he or she will be represented by an attorney." (See FAC ¶ 77.) Additionally, according to plaintiffs, "LegalZoom directly purchases uniquely positioned advertisements on Google and other forms of online advertising whenever consumers search the names of the [p]laintiffs' businesses, including 'LegalForce'." (See FAC ¶ 78.)

Based on the above allegations, plaintiffs assert that LegalZoom, by making false and/or misleading statements of fact on its website and in its advertisements, has violated the Lanham Act and the California Business and Professions Code (see FAC ¶¶ 128-32, 144-47, 157-60), and, by engaging in the unauthorized practice of law, has committed acts of negligence and breached fiduciary duties owed to plaintiffs (see FAC

¶¶ 164-70, 176-82).

## DISCUSSION

LegalZoom seeks an order compelling plaintiffs to arbitrate their claims.

Under the Federal Arbitration Act ("FAA"):

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

See 9 U.S.C. § 3.  Additionally, under some circumstances, the court may dismiss the claims that are subject to arbitration.  See Sparling v. Hoffman Construction Co., 884 F.2d 635, 637-38 (9th Cir. 1988).  In either instance, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  Id.

Here, as set forth above, plaintiffs allege that "[p]laintiffs filed two trademark applications through the LegalZoom website."  (See FAC ¶ 60.)  LegalZoom asserts, and plaintiffs do not disagree, that, in order for a customer to use LegalZoom's services on its website, the customer must agree to LegalZoom's "Terms of Service."  (See Hartman Decl. ¶¶ 3, 5-7.)  Further, the parties agree that the Terms of Service include an arbitration agreement.  (See id. Ex. 2 ¶ 16; FAC Ex. M ¶ 16.)

The arbitration agreement, which is contained in a section of the Terms of Service titled "Dispute Resolution by Binding Arbitration," reads in relevant part as follows:

> LegalZoom and you agree to arbitrate all disputes and claims between us before a single arbitrator.  The types of disputes and claims we agree to arbitrate are intended to be broadly interpreted.  It applies, without limitation, to:

//

3

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory;

- claims that arose before these or any prior Terms (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and

- claims that may arise after the termination of these Terms.

(See id.)

In opposing LegalZoom's motion to compel arbitration, plaintiffs argue they are not bound by the Terms of Service, that the Terms of Service agreement is void or voidable, and that two of plaintiffs' claims are not covered by the arbitration agreement. The Court considers these arguments in turn.

**A. Parties Bound by Arbitration Agreement**

Plaintiffs argue they are not parties to the Terms of Service and, consequently, are not bound by the arbitration agreement therein.

In support of the instant motion, LegalZoom has offered evidence, undisputed by plaintiffs, that "[t]o make any purchase from LegalZoom, the customer must affirmatively indicate his or her assent to the hyperlinked Terms of Service" by clicking on a button stating "Agree & place order," and that "[i]f the customer does not affirmatively indicate assent to the Terms of Service, no purchase may be made." (See Hartman Decl. ¶ 7.) Additionally, LegalZoom has offered evidence, undisputed by plaintiffs, that, on November 29, 2017, an individual using the name "Raj Abhyanker" obtained from LegalZoom various services related to the mark "drawmarkia" and, in so doing, clicked on the "Agree & place order" button (see id. ¶ 9), and that, on December 4, 2017, an individual using the name "Ryan Bethell" obtained from LegalZoom various services related to the mark "piggiebank" and, in so doing, clicked on the "Agree & place order" button (see id. ¶ 10). In light of the above evidence, along with one of the allegations in the FAC, LegalZoom argues that not only Abhyanker but also LegalForce RAPC and Legal Force are bound by the Terms of Service.

4

1    Specifically, as to the FAC, LegalZoom points to the following sentence:
2 "Plaintiffs filed two trademark applications through the LegalZoom website." (See FAC
3 ¶ 60.) Contrary to LegalZone's argument that one can infer from such statement that all
4 three of the named plaintiffs are parties to the Terms of Service, the next sentence
5 clarifies that only two of those "plaintiffs" are alleged to be the customers on whose
6 behalf LegalZoom provided those services; that sentence states: "Email addresses of
7 raj@legalforcelaw.com for customer Raj Abhyanker and ryanb@legalforcelaw.com were
8 used for customer LegalForce RAPC Worldwide (on behalf of Team Messaging
9 Solutions, Inc., represented by attorney manager Ryan Bethel)." (See id.) In other
10 words, the "customers" that received LegalZoom's services were Abhyanker and
11 LegalForce RAPC. Consistent therewith, plaintiffs, in other portions of the FAC, allege
12 that Abhyanker and LegalForce RAPC each "retained" LegalZoom to "prepare and file" a
13 trademark application (see FAC ¶ 168), that Abhyanker and LegalForce RAPC paid
14 LegalZoom the "fees" necessary to file a trademark application to the USPTO (see FAC
15 ¶ 165), and that LegalZoom provided Abhyanker and LegalForce RAPC with "legal
16 advice in the selection of classification and description of goods and services" (see FAC
17 ¶ 169).
18    As the above-cited allegations constitute judicial admissions that, along with
19 Abhyanker, LegalForce RAPC was a customer that contracted for LegalZoom's services
20 under the Terms of Service, see Hakopian v. Mukasey, 551 F.3d 843, 846-47 (9th Cir.
21 2008) (holding "[a]llegations in a complaint are considered judicial admissions"), the
22 Court finds LegalForce RAPC, acting through its employee Ryan Bethel, agreed to the
23 Terms of Service, and, consequently, is bound by the arbitration agreement contained
24 therein.[3]

---

[3] The Court finds unpersuasive plaintiffs' reliance on a statement in a declaration signed by Ryan Bethel that he did not "intend" to bind anyone other than himself to the Terms of Service (see Bethel Decl. ¶ 10), as his subjective intent is irrelevant. See G&W Warren's, Inc. v. Dabney, 11 Cal. App. 5th 565, 577 (2017) (holding "contract formation is governed by objective manifestations, not [the] subjective intent of any individual involved").

5

By contrast, the FAC includes no admission that LegalForce agreed to the Terms of Service. With respect to LegalForce, LegalZoom relies, in the alternative, on the arbitration agreement's provision that the term "you," i.e., the person or entity that assents to the Terms of Service, includes "agents," as well as "all authorized or unauthorized users or beneficiaries of services or products under these Terms." (See Hartman Decl. Ex. 2 ¶ 16.) LegalZoom, however, has made no showing that LegalForce is or was an agent of Abhyanker or LegalForce RAPC as to either of those two parties' transactions with LegalZoom, or that LegalForce is or was a user or a beneficiary of the trademark-related services LegalZoom provided to either Abhyanker or LegalForce RAPC.

Accordingly, the Court finds LegalForce RAPC is bound by the Terms of Service, and that LegalForce is not.

**B. Challenge to Validity of Terms of Service**

Plaintiffs argue that the Terms of Service agreement is, for a number of reasons, void or voidable. The Court need not consider whether any such ground identified by plaintiffs has merit, as only the arbitrator, not the Court, may consider a challenge to the validity of the Terms of Service. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) (holding that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator").[4]

Accordingly, plaintiffs' challenge to the enforceability of the Terms of Service agreement does not constitute a cognizable ground to avoid arbitration.

**C. Scope of Arbitration Agreement**

Plaintiffs argue that two of the six causes of action asserted by LegalForce RAPC against LegalZoom do not fall within the scope of the arbitration agreement.

In that regard, plaintiffs first argue that a portion of the claim titled "Declaratory Relief," asserted in the FAC as the First Cause of Action, is not subject to arbitration

---

[4]Plaintiffs do not challenge the arbitration agreement itself.

because, according to plaintiffs, it "has nothing to do with the trademark-filing contract." (See Pls.' Opp. at 10:25 - 11:1.)  The Court disagrees.  The First Cause of Action contains a claim alleging a "controversy" exists between LegalForce RAPC and LegalZoom with respect to "LegalZoom's unfair business practices and corporate ownership structure, false advertising, professional negligence, breach of fiduciary duty, and unauthorized practice of law."  (See FAC ¶ 87.)  To the extent such claim is based on a "controversy" as to LegalZoom's "false advertising" (see FAC ¶ 87), the claim falls within the arbitration agreement's clause covering "claims relating to advertising" (see Hartman Decl. Ex. 2 ¶ 16), and the remaining alleged issues in "controversy" fall within its broad clause covering "claims arising out of or relating to any aspect of the relationship between us" (see id.); see also Chiron Corp., 207 F.3d at 1131 (describing as "broad and far reaching" provision requiring arbitration of "[a]ny dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this [a]greement").

Plaintiffs next contend their Lanham Act claim, asserted in the FAC as the Third Cause of Action, does not fall within the scope of the arbitration agreement because, according to plaintiffs, such claim likewise "has nothing to do with the trademark-filing contract."  (See Pls.' Opp. at 11:22-24.)  The Court again disagrees.  As set forth above, LegalForce RAPC agreed to arbitrate any "claims relating to advertising" (see Hartman Decl. Ex. 2 ¶ 16), and the Lanham Act claim is expressly based on LegalZoom's allegedly false and/or misleading advertising (see FAC ¶¶ 129-37).

Accordingly, the Court finds LegalForce RAPC's claims against LegalZoom are, in their entirety, covered by the arbitration agreement.

**D.  Propriety of Dismissal or Stay**

LegalZoom seeks an order dismissing any claims subject to arbitration, or, in the alternative, an order staying those claims pending arbitration.

Where, as here, all of the plaintiff's claims against a defendant are referable to arbitration, the Court has the discretion to either dismiss or stay those claims.  See

7

Sparling v. Hoffman Construction Co., 884 F.2d 635, 637-38 (9th Cir. 1988) (affirming dismissal of claims referable to arbitration, where those claims constituted all claims asserted by one of multiple plaintiffs against one of multiple defendants; rejecting argument that "a stay pending arbitration" is the "only remedy" available to party seeking to compel arbitration).

Here, although all of LegalForce RAPC's claims against LegalZoom are referable to arbitration, and although plaintiffs have not argued, let alone identified any grounds upon which, a stay rather than dismissal would be warranted, the Court finds it preferable to stay those claims, given LegalForce RAPC's challenge to the enforceability of the contract in which the arbitration agreement is contained.

## CONCLUSION

For the reasons stated above, LegalZoom's motion to compel arbitration is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks an order staying LegalForce RAPC's claims against LegalZoom, the motion is GRANTED, and LegalForce RAPC's claims against LegalZoom are STAYED pending arbitration.

2. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: April 10, 2018

MAXINE M. CHESNEY
United States District Judge